## Newman's Appeal.

A conveyance of a tract of land by a father to his son, "for himself during his natural life, and in trust for and for the use of his children," gives to the son's children a life estate only.

A devise of land subject to the payment of a sum of money to the person who should be intrusted with the execution of the will, for the uses and purposes therein expressed, is a charge of such sum of money upon the land devised, which may be recovered by the administrator *cum testamento annexo*, by proceedings in the Orphans' Court.

The devisees of land charged with the payment of a legacy, having an independent title to the premises, the shares of some of them were sold at sheriff's sale, under executions against them, before they had made an election whether or not they would take under the will, and the parties in interest having subsequently elected to take under the will, it was *held*, that the lien of the legacy was not discharged by the sheriff's sales.

Where land is devised to several persons charged with the payment of a gross sum of money, it is error to charge the entire premises with the whole legacy; each devisee is liable only for his proportionate part thereof.

APPEAL from the Orphans' Court of *Pike county*.

This was an appeal by Solomon Newman and others, the devisees, and their alienees, under the will of John Brink, deceased, from the decree of the court below, charging the land devised with the payment of the sum of $5425 to the administrator with the will annexed of the said John Brink, deceased.

John Brink, in his lifetime, was the owner of the premises in question, known as the "Cole farm;" and conveyed the same to his son William Brink, by the following instrument:—

"Know all men by these presents, that I, John Brink, of Upper Smithfield township, Pike county, and state of Pennsylvania, in consideration of the natural love and affection which I have and bear to my son, William Brink and his children, *and toward the better maintenance and education of the same,* and for other causes, have given, granted, bargained, and sold, confirmed, and by these presents do remise and release for ever, unto William Brink, *for himself during his natural life, and in trust for and for the use of his children, share and share alike,* all the farm on which he now resides, or which was conveyed to me by Cornelius Cole, situate on the river Delaware, in the township aforesaid, together with all the appurtenances thereunto belonging; subject nevertheless to the yearly rent of one-fourth of all the grains, grass, sauces, and pasture that shall be raised on said farm, yearly and every year, during my life, if the same is by me demanded, or my assigns, and not otherwise.    In witness whereof, I have hereunto set my hand and seal the 15th day of September 1827.

"Signed and sealed in presence of, ⎫
      "JOHN B. ROCKWELL,    ⎬   "JOHN BRINK." [SEAL.]
      "D. M. BROADHEAD.    ⎭

William Brink being in possession of the premises under this

conveyance, his father, John Brink, made his last will, on the 17th June 1841, and thereby devised the Cole farm to the sons and daughters of his son William Brink, by his first wife, and to the issue of such sons and daughters, as might be deceased; such issue to take such part or share in said farm, as said son or daughter would have taken had they been living, and to such sons and daughters and issue aforesaid, and to their heirs and assigns for ever, as tenants in common, share and share alike. Which said farm and premises, the testator thereby declared, should be subject to and chargeable with the payment of the sum of $2500, with interest from the 1st April 1840, to be paid by the said devisees in five annual payments after his decease, unto the person or persons who should or might be intrusted with the execution of his will, for the uses and purposes therein specified. His will was proved on the 12th December 1842.

At the time of William Brink's decease, which took place on the 12th April 1853, his second wife resided on the Cole farm with her children, and they remained there, claiming title. The eight surviving children of the first wife brought an ejectment against them, and recovered possession. This case is reported in 7 *Casey* 165.

On the 16th April 1853, William H. Brink, one of the sons of William Brink, deceased, conveyed his undivided eighth part of the premises to Cornelius W. Dewitt; and on the 20th February 1854, the estate of Dewitt therein was sold at sheriff's sale, to Oscar H. Mott, who conveyed the same, on the 6th January 1855, to Catharine Jane, the wife of Solomon Newman.

On the 9th February 1854, the interest of Archibald Brink, another of the sons of William Brink, deceased, was sold at sheriff's sale to Oscar H. Mott. On the 5th August 1854, John A. Brink, another of the sons, conveyed his share to the said Oscar H. Mott; and Mott afterwards conveyed the undivided half of these two shares to William C. Salmon, since deceased.

On the 17th November 1856, Louisa Doolittle, daughter of Maria Doolittle, who was a daughter of William Brink, deceased, sold her share to Emeline Brink, the wife of Archibald Brink.

On the 15th September 1857, Samuel D. Van Etten, administrator with the will annexed of John Brink, deceased, presented his petition to the Orphans' Court, under the 59th section of the Act of 24th February 1834, for the purpose of enforcing the payment of the sum of $2500 and interest, charged upon the premises by the will of his testator.

The respondents by their answer set up the following grounds of defence: 1. That this sum of $2500 was not a legacy, and consequently, not within the provisions of the 59th section of the Act 24th February 1834. 2. That they claimed a fee-simple in the land, under the conveyance of 15th September 1827; but if this deed should be held to have created an interest which termi-

nated at the death of William Brink, then they claimed to hold under the will of John Brink. 3. That as to the two undivided shares that had been sold at sheriff's sale, there could be no recovery, because by the said sales they had been discharged from this lien.

The court below, on hearing of the cause, on petition, answer, and proofs, made a decree in favour of the petitioner, and delivered the following opinion :—

"There were originally ten children of William Brink by his first wife. Two of the said children, to wit, Franklin and Nancy, died after the death of the testator, without issue. Their interest vested in their brothers and sisters, which leaves eight heirs to claim, either under the deed or will of John Brink. Some of the shares have passed into the hands of strangers, and some are still held by the children of William Brink. I believe I have arrived at the respective claimants at present, and the interest held by each. They are as follows, to wit:

| | | |
|---|---|---|
| 1 and 2, Solomon Newman, and Catharine, his wife, | $\frac{1}{4}$ | part. |
| 3, Louisa and Nancy Doolittle, children of Elijah Doolittle and Maria his wife, | $\frac{1}{8}$ | " |
| 4, Elijah Doolittle, and Louisa, his wife, | $\frac{1}{8}$ | " |
| 5 and 6, O. H. Mott, and heirs of William C. Salmon, | $\frac{1}{4}$ | " |
| 7, John and Nancy Michael, | $\frac{1}{8}$ | " |
| 8, Thomas Smith, and Eleanor, his wife, | $\frac{1}{8}$ | " |

8 shares.

"All of the above claimants joined in bringing an ejectment, in the year 1853, against the occupants of the land and farm devised under the will. They recovered in the suit on the strength of their title to it, as against the widow and children of William Brink, by his second marriage; and, by due course of law, were placed in the actual possession of the premises. By this proceeding, if by no other, they have accepted the land in some form; they are now in possession of it, so far as the rights of the complainant are concerned.

"That the heirs of William Brink, by his first wife, have title to the farm, is not in dispute. The only question to be determined is, whether they may claim under the deed of John Brink to William Brink of 15th September 1827, or must claim under the will of John Brink?

"John Brink, on the 15th day of September 1827, executed to William Brink a deed for the farm on which the said William then resided. The construction to be placed upon that instrument must determine the title under which the present complainants must claim. It has already been decided, that William Brink only took a life estate in the farm: 7 *Casey* 165. Whether his children, named in that deed, and for whose benefit it was made, have any

interest under it since the death of their father, has not been determined. At this day, when both are dead, the intentions of the grantor and grantee can only be gathered from the records they have made. William was in the possession of the farm when the deed was made. He and his father were both widowers. William had a large family of children. John Brink was his father, and, so far as the court are informed, had, at the time, no other children. Both the father and the son subsequently married, and raised families of children by their respective second wives.

"John Brink died in 1842, after having made his will, which was duly proved on the 1st day of December 1842. William Brink died in April 1853, having survived his father more than ten years, and having all of the time resided upon and occupied the premises in dispute. His second wife and the children of the second marriage remained in possession of the same, until they were ousted by the present defendants in 1855.

"John owned another farm adjoining the one he gave to his son William. He resided upon it. For many years they lived on good terms; assisted each other in the labour and management of the adjoining farms, and the evidence would seem to justify the belief, that their relations were mutually pleasant.

"In 1838, after both had married the second time, William Brink brought an action of ejectment in this court against John Brink, his father, for the premises he was at the time in possession of. I have not the full record in that case before me, and, therefore, have some difficulty in understanding why it should have been instituted by the party in possession. It is, however, only evidence so far as it throws any light upon the understanding of these parties in reference to the deed of 15th September 1827. When that suit was brought to trial, and after a jury had been impannelled, on the 29th day of January 1840, an agreement was made by the parties and the suit settled. By that agreement, William was to have the possession of the land, with the exception of from two to four acres. John Brink released his claim for rent reserved, and, in lieu thereof, obtained an equal right in a 'fishery' upon the premises. But it was distinctly stated in the agreement, that 'said possession is to be under and according to and in pursuance of the deed from John Brink to William Brink, dated the 15th of September 1827, except that John Brink released the rents, &c.' This agreement is witnessed by the respective counsel of the parties, and, it is fair to presume, was drawn by them, in view of their claims made at the time, and the protection of their rights. In speaking of the title of William Brink, the word 'possession' only is used. If the title to the land was absolutely vested in William Brink for life, and afterwards in his children, why treat about it, and why refer to that deed? It was not in the power of John Brink to alter or change

it, and William was sufficiently bound by its conditions. The settlement does not strengthen the title either of William Brink or of his children.

"In 1841, the following year, John Brink made his will, in which he manifested his understanding of the deed of 15th September 1827, made to his son William, by making a testamentary disposition of the property. His disposition towards the children provided for in the deed, would seem to have undergone no change when he devised it to them 'and to their heirs and assigns for ever.' The following clause in his will, it is admitted, described the same land as that conveyed by the deed, and is as follows, to wit:

"'I will, give, and devise that certain farm now in the occupancy and possession of William Brink, situate in Dingman township, in Pike county aforesaid, described as follows (here description follows), to the sons and daughters of William Brink, by his first wife, and to the issue of such sons and daughters of the said William Brink, by his first wife, as may be dead,—such issue to take such part or share in said farm as said son or daughter would have taken, had they been living. And to such sons and daughters and issue aforesaid, and to their heirs and assigns for ever, as tenants in common, share and share alike, hereby meaning that the said described farm and premises shall go to and be enjoyed by the sons and daughters (and the issue of such as may be dead and their heirs and assigns) of the said William Brink, by his first wife, and not to the issue of William Brink, by his present and second wife; which said farm and premises hereinbefore devised shall be subject to, and chargeable with, the payment of the sum of two thousand five hundred dollars, with interest from the first day of April 1840, to be paid by the said devisees in five equal annual payments after my decease, unto the person who shall or may be intrusted with the execution of this my will, &c.'

"If the intention of the parties is to have any weight in construing or understanding the deed to William Brink, it would seem very clear, that John Brink did not intend to convey a title in fee-simple. All of his acts left upon record forbid that conclusion. The interest he manifested in the management of the farm, his claim to the fishery, the settlement of the action of ejectment, and lastly, his will, all give evidence that he regarded the estate in William as a life estate only. But does not the very language of the deed itself explain what was intended? William had no wife and a large family of children. He was just in the situation to excite the sympathy of a parent, and his father seemed to be moved by his condition. He extended his helping hand in consideration of 'the natural love and affection' which he felt towards his son William and his children, 'and towards the better maintenance and education of the same.' In the absence of

words of 'inheritance' in the deed, there is nothing to show that he intended to do more than to aid in 'raising and educating' the children.  His generosity towards them seems to have been limited by that view, and unless the language of the instrument itself creates a greater title in them than was intended, his intention will be carried out.

"If the words 'for ever' had not been used in the deed, a greater title than a life estate in William never would have been contended for.  Does that change the whole title?  Is it equivalent to the usual and ordinary words of inheritance?  Has it the same import as the word heirs, when used in this connection?  I think not; and, therefore, feel called upon to declare that the deed contains no language sufficient to vest the fee-simple to that farm in the heirs.

"If this construction of that deed be correct, then it settles the main question in the case.  The heirs of William Brink, by his first wife, claim the farm.  They choose to claim it under the deed of their father, because, if they can succeed, they escape from the encumbrance charged upon it by the will.  They seem, by their first answer, to have been undecided as to which title they would rely upon.  Afterwards, they elect to rely upon the deed, knowing, doubtless, that if they failed in that defence, they could still fall back upon the will.  The latter only can avail them.

"The deed of 15th September 1827 only vested an estate in William Brink during his natural life, upon the condition that he used it for the 'maintenance and education of his children during that time, share and share alike.'  At his death the trust ceased, and the estate reverted to John Brink.

"The will of John Brink vested the title to the farm in the defendants, just as soon as they accepted it.  They have taken possession of it, and must be considered as having done so under the provisions of the will, and as having taken it with the encumbrance charged upon it.  The testator has charged upon it a legacy of $2500, with interest from the first day of April 1840, payable 'by the devisees, in five equal, annual payments after his decease, unto the person who shall be intrusted with the execution of his will,' for the uses and purposes hereinafter expressed.  The amount, when received by executor, by the terms of the will, would belong to the general fund for distribution among the children of the testator.  The interest accumulated amounts to the sum of $2925—counted up to the 1st day of October 1859, a sum greater than the principal.  The whole amount, now a lien upon the farm under said will, is $5425.  There are eight shares, and when divided amongst them, would charge each child's share with the sum of $678.15, with interest from the first day of October 1859.  The charge, however, is an entire encumbrance

against the entire farm, and must be treated as such. This amount must be paid to perfect a title in the defendants.

"It is insisted, however, that as to two of the children's shares the lien has been discharged by a judicial sale, and that, as to said 2–8ths of the amount, there should be no decree. The charge upon the land was not such a lien as a judicial sale would affect. Even if there were no reasons to obviate it, the charge would run with the land, undisturbed by a judicial sale of fractional parts, but in this case there are insurmountable difficulties.

"The heirs under the will had no interest in the land until they accepted the devise. A testator cannot force land upon a devisee. It is to be regarded as a contract, and requires the assent of the devisee. When assumed, the obligation is a personal one to pay money. The heirs, in this case, did not accept the devise, which was only done by taking the possession, until the 4th day of December 1855. Prior to that date, they had no interest in the land.

"Archibald Brink's interest was sold on the 8th day of February 1855. Cornelius W. Dewitt became the assignee of the interest of William H. Brink, by voluntary conveyance; and said interest was sold by the sheriff on a judgment against Dewitt, on the 20th of February 1854. Thus it will be seen, that both sales took place before the heirs had accepted the devise, or entered into possession under the will. Under no circumstances, can the sales so made affect the lien or encumbrance charged upon the land. All the vendees of the sheriff can take is the right to accept the devised premises, pay the charge, and have the benefit of the property. If this right is not disputed, they should be satisfied.

"Having thus passed upon all of the questions raised, and having arrived at the conclusion that the whole $2500 is a charge upon the whole farm devised, it only remains for the court to enter the proper judgment in the case. It is, therefore, decreed as follows, to wit:

"September 19th 1859, this cause came on to be heard on bill and answer and report of auditor upon the facts, and was argued by counsel; and now, on full consideration thereof, it is ordered, adjudged, and decreed that the said defendants, Solomon Newman, and Catharine his wife; Louisa and Nancy Doolittle; Elijah Doolittle, and Louisa his wife; Oscar H. Mott; John and Nancy Michael; Thomas Smith, and Eleanor his wife; Sarah Augusta Salmon, and William A. Salmon; Edward C. Salmon, Florence E. Salmon, and George E. Salmon, who have for their guardian John M. Williamson; do pay unto the said complainant Samuel D. Van Etten, administrator with the will annexed of the goods and chattels, rights and credits which were of John Brink, deceased, for the purposes named in said will, &c., the sum of

[Newman's Appeal.]

$5425 (five thousand four hundred and twenty-five dollars) with interest from the first day of October, A. D. 1859, with the costs of this proceeding, to include the sum of $33.40 to the auditor for his fees; and in case the same shall not be paid within one year from this date, that then the payment thereof shall be enforced by a writ of *levari facias* against the land of the said defendants, which is described in the bill or petition of the complainants, and the prothonotary is directed to enter the decree of record."

From this decree the present appeal was taken.

*J. M. Porter & Son*, and *C. & M. Goepp*, for the appellants.—The Orphans' Court had no jurisdiction; this is not the case of a legacy charged on land, and not within the terms of the Act of 1834. It is a well-settled rule of construction, that technical words shall be technically construed in a statute as well as in a conveyance: Brocket *v.* Ohio and Pennsylvania Railroad Co., 2 *Harris* 243: Hinnershits *v.* Barnhard's Executors, 1 *Id.* 518; *Dwarris on Statutes* 696; *Williams on Executors* 905.

The paper of the 15th September 1827 is not a present conveyance, but rather an executory agreement to convey, in which words of inheritance are not necessary to pass a fee: Ogden *v.* Brown, 9 *Casey* 247; Defraunce *v.* Brooks, 8 *W. & S.* 68; Dearth *v.* Williamson, 2 *S. & R.* 498; McFarson's Appeal, 1 *Jones* 511; Alger *v.* Fay, 12 *Pick.* 322; Stouffer *v.* Coleman, 1 *Yeates* 393; Neave *v.* Jenkins, 2 *Id.* 107; Sherman *v.* Dill, 4 *Id.* 298; Maus *v.* Montgomery, 11 *S. & R.* 329; Kenrick *v.* Smick, 7 *W. & S.* 41.

The sheriff's sales of the shares of Archibald Brink and William H. Brink, discharged them from the lien of this encumbrance: Swoope's Appeal, 3 *Casey* 58; Hoover *v.* Hoover, 5 *Barr* 351; Lobach's Case, 6 *Watts* 167; Barnet *v.* Washebaugh, 16 *S. & R.* 410; Randolph's Appeal, 5 *Barr* 245; McLenahan *v.* Wyant, 1 *Penn. R.* 112; Hellman *v.* Hellman, 4 *Rawle* 440.

The court below certainly erred in making a personal decree against all the parties for a gross sum. Each party was only personally liable for an undivided eighth part of the amount. There is no joint liability.

*Dimmick*, for the appellees, cited Marcy's Estate, 10 *Harris* 140; Shollenberger's Appeal, 9 *Id.* 337; Mohler's Appeal, 5 *Barr* 418; Swoope's Appeal, 3 *Casey* 61; McCullough *v.* Wiggins, 10 *Harris* 290; Hart *v.* Homiller, 8 *Id.* 248; s. c., 11 *Id.* 43; Ruston *v.* Ruston, 2 *Yeates* 61; Gause *v.* Wiley, 4 *S. & R.* 506; Dewalt's Appeal, 8 *Harris* 239; Bear *v.* Whisler, 7 *Watts* 144; Irvine *v.* Campbell, 6 *Binn.* 118; Mix *v.* Ackla, 7 *Watts* 316; Swar's Appeal, 1 *Barr* 93; Mohler's Appeal, 5 *Barr* 418; Hoover

v. Hoover, *Id.* 351; Raffensberger v. Cullison, 4 *Casey* 426; Devine's Appeal, 6 *Id.* 350.

The opinion of the court was delivered by

LOWRIE, C. J.—The conveyance is to William, for himself during life, and in trust for his children share and share alike, without words of inheritance; and we have already said enough, 7 *Casey* 165, to show that no fee simple can pass by it. But we do not see how its terms can be satisfied, without allowing it to pass a life estate to the children also, for their several shares, subject to the estate of their father. This, however, is of little consequence; for the owners of these shares elect to take under the will, rather than put up with a life estate. The two estates are inconsistent, and therefore they cannot have both. Electing to take under the will, they must take according to the will, and must pay the sum charged upon the devise by the testator. The sum thus charged is made payable to the person who may be intrusted with the execution of the will, as trustee for the maintenance of the testator's wife and minor children, and therefore the administrator *cum testamento annexo* may sue for it; and it seems to us, that the Orphans' Court is the proper forum.

If the children had refused to take under the will, each would have had only his or her life estate in one-tenth, and the charge would have fallen entirely on the reversion, and no more could be sold under it. Before they made their election, the shares of two of them were sold by the sheriff, by virtue of judgments against them. Did these sales discharge the lien of this legacy against those shares? We think not; for there had then been no election to take the devise instead of the life estate. After the sheriff's sale, none but the sheriff's vendee could make the election. Formerly, the only remedy for such a legacy was by a common law action, as on a constructive contract, and the judgment was personal; but now the only remedy is in the Orphans' Court, and payment can be enforced only "out of the real estate" devised and charged. Such is the nature of the decree in this case; but it is erroneous in charging each share with the whole legacy, instead of its proportion thereof. Thus far we must reform it.

DECREE.—This cause came on to be heard on an appeal from the Orphans' Court of Pike county, and was argued by counsel; and now on full consideration thereof, it is ordered and decreed, that the decree of the said Orphans' Court be reversed at the costs of the plaintiff; and it is now here ordered and decreed, that the plaintiff recover of the defendants the sum of five thousand four hundred and twenty-five dollars ($5425), with interest from the first day of October 1859, to be paid by them as follows, to wit, Solomon

[Newman's Appeal.]

Newman and Catherine his wife, one-fourth thereof; Louisa Doolittle and Nancy Doolittle, children of Elijah and Maria Doolittle, each one-sixteenth thereof; Elijah Doolittle and Louisa his wife, one-eighth thereof; Oscar H. Mott and the heirs of William C. Salmon, one-fourth thereof; John Michael and Nancy his wife, one-eighth thereof; and Thomas Smith and Eleanor his wife, one-eighth thereof; and that in the same proportions, they pay all the costs in the Orphans' Court. And in case the same be not paid within one year from the 19th September last, then payment may be enforced by several writs of *levari facias* against the several shares of the land described in the petition, belonging to the delinquent defendants; and the cause is now remanded to the Orphans' Court for its execution.